IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE J. SIMON, in her capacity as Trustee of the Julius M. Simon Revocable Trust, Plaintiff, | : : : : | CIVIL ACTION |
| v. | : : | NO. 11-5412 |
| ELLIS BLOCK, LISA J. BLOCK and JONATHAN L. SIMON, Defendants. | : : : : | |

Henry S. Perkin, M.J.                                                                                    September 22, 2014

## MEMORANDUM

This case involves a family dispute which was resolved and settled on January 7, 2013 following a lengthy in-person settlement conference.[1] At that time, the case was dismissed pursuant to Local Rule of Civil Procedure 41.1 (b). The Court retained jurisdiction for a period of six months for the sole purpose of enforcing terms of settlement.

**I.     PROCEDURAL HISTORY FOLLOWING SETTLEMENT OF THE CASE.**

On July 3, 2013, the Plaintiff, Stephanie J. Simon ("the Plaintiff") filed a motion to enforce settlement. Defendants Ellis Block and Lisa Block ("Block Defendants") responded to

---

[1] In April of 1991, in connection with the purchase of Royal Green, a family business, from their parents, Julius M. Simon and Millicent Z. Simon ("Mr. and Mrs. Julius Simon"), Defendant Jonathan L. Simon ("Defendant Simon") and Defendants Lisa Simon Block and her husband Ellis Block (the "Block Defendants"), entered into two separate Stock Purchase and Private Annuity Agreements. The Annuity Agreements required Defendant Simon and the Block Defendants to pay $2,530.05 per month to Mr. and Mrs. Julius Simon for the remainder of their lifetimes. After 2002, Defendant Simon and the Block Defendants ceased tendering monthly payments under the Annuities.

On May 15, 2008, a Revocable Trust was created with Julius M. Simon as the Donor and the Plaintiff as the Trustee. After a series of transfers, the Annuities became an asset of the Revocable Trust for the benefit of the Revocable Trust and its beneficiaries. Following the death of both Mr. and Mrs. Julius Simon, Plaintiff brought this action on behalf of the Julius Simon M. Revocable Trust, seeking the payments that her parents never pursued during their lives from the Plaintiff's brother, sister and brother-in-law.

the motion to enforce with a motion for sanctions in the form of counsel fees. Defendant Jonathan L. Simon ("Defendant Simon") responded to the motion to enforce settlement by asserting that no relief was necessary and that the delay in fully accomplishing the settlement was due, in part, to the Plaintiff's failure to provide certain documents and Julius Simon's Rolex watch. The motion to enforce settlement and motion for sanctions were referred to me for resolution on November 19, 2013, by the Honorable Lawrence F. Stengel. Thereafter, I held a series of conference calls with counsel and scheduled a hearing on the motions for March 26, 2014.

A telephonic settlement conference was held on March 25, 2014, with counsel for the Plaintiff and Defendant Simon, at which time the Court believed that all issues concerning settlement between the Plaintiff and Defendant Simon had been resolved. It was anticipated on March 25, 2014, that the agreement of Plaintiff and Defendant Simon would be completed by March 28, 2014, and would result in the Plaintiff withdrawing her motion to enforce settlement filed on May 13, 2013.[2] As a result, the hearing for March 26, 2014 was canceled. *See* Docket No. 60. On March 31, 2014, I denied the Block Defendants' motion for sanctions in the form of counsel fees. *See* Docket No. 63. On April 14, 2014, in order to effectuate settlement, I entered an Order directing that the Plaintiff should disclose information to counsel for Defendant Simon with respect to litigation in Massachusetts state court and

> Upon compliance with the above enumerated directives, the remaining open items of performance under the settlement agreement, namely: the exchange of the Rolex watch which was the subject of the settlement; and the $215,000 check payable to Plaintiff, Stephanie J. Simon, shall be exchanged no later than Friday, April 25, 2014.

---

[2] To date, Plaintiff has not formally withdrawn the motion for enforcement of settlement.

*See* Docket No. 66.  Again, the Court believed that all matters between the parties with regard to enforcement and implementation of the terms of settlement were resolved.

On May 9, 2014, however, the Plaintiff filed a motion seeking to hold Defendant Simon in contempt of court and to assess sanctions against him.  *See* Docket No. 67.  Unfortunately, I learned during a conference call with counsel for both the Plaintiff and Defendant Simon on May 14, 2014, that the *source* of the funds to be paid pursuant to the settlement agreement by Defendant Simon to the Plaintiff was the final unresolved issue between the parties.  Plaintiff filed a supplemental memorandum of law on May 29, 2014.  *See* Docket No. 70.  Defendant Simon's response in opposition was filed on June 10, 2014.  *See* Docket No. 72.  On June 19, 2014, the matter was referred by Judge Stengel for resolution.  Plaintiff's reply brief was filed on July 14, 2014.  *See* Docket No. 77.  Thus, the motion was fully briefed by both parties and the Court set July 18, 2014, as the date for a hearing.

## II.   FINDINGS OF FACT.

The terms of settlement reached on January 7, 2013 between the Plaintiff and Defendant Simon provided for a payment of $215,000 by Defendant Simon to the Plaintiff. This sum was to be paid by April 25, 2014.[3]  The first check in the amount of $215,000 was tendered to Plaintiff's counsel in a timely fashion, but was made payable to an incorrect party, according to the Plaintiff. The Plaintiff also objected to the fact that the check was drawn on the account of a company named Royal Green, which was never a party in this case.  Plaintiff's counsel informed the Court at the July 18, 2014 hearing that the Plaintiff objected to this check because Royal

---

[3] This requirement was set forth in this Court's Order of April 14, 2014.  See Docket No. 66.

Green is not a party in this action. (N.T., 7/18/14, p. 7.) Although Defendant Simon did not agree with the Plaintiff's objections regarding the first check, he issued a second check made payable to the Plaintiff in her representative capacity as Trustee of the Julius M. Simon Revocable Trust, which the Plaintiff believed was the correct payee. The Plaintiff objected to this second check because it was also drawn on the account of Royal Green. (<u>Id.</u> at 8.)

Due to Plaintiff's objection to the second check, the Court held a telephone conference on May 13, 2014, in an effort to resolve the Plaintiff's objection. After this conference, Defendant Simon agreed to provide and did provide the Plaintiff with a cashier's check made payable to the Plaintiff in her representative capacity as Trustee of the Julius M. Simon Revocable Trust. Although this third check was a cashier's check, the Plaintiff again objected because the check bore a cross-reference by Fulton Bank that a Royal Green account was the original source of the funds which had been deposited into the Fulton Bank account from which the cashier's check was issued

During the July 18, 2014 hearing, the Court questioned the Plaintiff's position regarding this third check because cashier's checks are drawn from a bank's account and not from an individual or corporate account. Although Plaintiff's counsel agreed with the Court, his objection was that the bank's notation on the cashier's check indicated that Royal Green was the remitter of the funds, not Defendant Simon, and that Royal Green was, therefore, the entity providing the funds which enabled the bank to issue the cashier's check. (*Id.* at 9.) Plaintiff's counsel argued that "[a] payment by Royal Green raises a number of possible risks that are foreign to the risks that were assessed in settling the case between the parties." (*Id.* at 9-10.) Counsel further argued that these risks included a possible involuntary bankruptcy proceeding

against Royal Green, a voluntary bankruptcy proceeding against Royal Green, a state law fraudulent transfer claim and issues involving the solvency of Royal Green and claims by possible creditors of Royal Green. (*Id.* at 10.)  In support of counsel's concerns, he referred to a personal injury case filed against Royal Green subsequent to the settlement of this case in January 2013.  He further argued that the Pennsylvania fraudulent transfer statute of limitations is a four-year period, and that he was concerned that the liabilities of Royal Green may include environmental claims.

At the hearing, the Plaintiff submitted into evidence the April 14, 2014 Order of Court and the three checks which had each been separately tendered by Defendant Simon as payment of his $215,000 obligation pursuant to the settlement between the parties reached on January 7, 2013.  The Court's Order and the checks were admitted into evidence, with no objection by Defendant Simon.  (*Id.* at 24-25.)

At the July 18, 2014 hearing, Defendant Simon first argued that even though Royal Green was not a party to the original litigation, it was a party to the release and was, in fact, released by the language of the settlement agreement. (*Id.* at 28.)  Defendant Simon presented the testimony of its counsel of record, Joseph E. Wolfson, Esquire, who first referred to a transcript of the settlement conference held before me on January 7, 2013, which constituted the settlement agreement between the parties. (*Id.* at 34.)  Attorney Wolfson referred to the Court's statement in the settlement colloquy that the $215,000 payment was to be paid to the Estate of Julius Simon and that "this put to bed all of the issues starting with anything relating to the parents, relating anything to the individual defendants, as well as the businesses." (*Id.* at 35.)  He explained that "there were a number of different businesses. There were two separate Royal Green companies"

and the release of claims was to go to all of the businesses. (*Id.*)

Attorney Wolfson testified that an April 25, 2014 meeting was scheduled and held at his office for Defendant Simon to deliver the first check which was tendered in this matter. During that meeting, at the time the $215,000 check was given to Plaintiff's counsel, he handed over Julius M. Simon's Rolex watch to Defendant Simon,[4] which was one term of the settlement. (*Id.* at 42.) At that meeting, Plaintiff's counsel did not object to the payee designation on the check, which was the Estate of Julius M. Simon ("the Estate"). On April 28, 2014, Plaintiff's counsel, via email, objected to both the payee, which was the Estate, and the payor, which was Royal Green Reading Corporation, of the tendered check. Defendant Simon's counsel responded by saying that it was his understanding that the settlement check was to be made payable to the Estate. (*Id.* at 45.) Plaintiff's counsel and Defendant Simon's counsel then discussed the ultimate payee of the settlement check and the identity of the payor of the check. Defense counsel opined that the proper payee was the Estate, but in order to resolve the issue, Defendant Simon was willing to issue a replacement check made payable to the Trust.

Regarding the identity of the payor of the check, "Royal Green," Defendant Simon's counsel explained that there existed two Royal Green corporate entities. (*Id.* at 72-74.) There is Royal Green Corporation, referred to as New Royal Green, which is an operating company in the recycling and salvage business. (*Id.* at 73, 76-77.) The other entity is Royal Green Reading Corporation,[5] referred to as Old Royal Green, and Defendant Simon is that corporation's sole

---

[4] The watch, which had been in the Plaintiff's possession, previously belonged to Julius M. Simon, Plaintiff's and Defendant Simon's deceased father.

[5] The first two checks were drawn on a Royal Green Reading Corporation account, and the cashier's check cross-referenced the Royal Green Reading Corporation account as the origin of the funds which were deposited by

individual owner. (*Id.*) Defendant Simon's counsel took the position in discussions with Plaintiff's counsel that there was "no possibility of any claims relating to the operating company to be in connection with this payor." (*Id.* at 57.) Nevertheless, the Plaintiff objected to the second check which was made payable to the Plaintiff in her representative capacity as Trustee of the Julius M. Simon Revocable Trust because it was issued from a Royal Green Reading Corporation account and not from a personal account of Defendant Simon. (*Id.* at 75.)

On May 9, 2014, the Plaintiff filed the within motion seeking a decision of this Court holding Defendant Simon in contempt of court for failure to comply with the Court's April 14, 2014 Order. *See* Docket No. 67. On May 13, 2014, the Court held a telephone conference with counsel regarding the motion for contempt. *See* Docket No. 68. During that conversation, Defendant Simon's counsel agreed to send a third check drawn on the account of a bank, not on any account belonging to Defendant Simon, i.e., a cashier's check. Following that call, additional correspondence was sent by Defendant Simon's counsel regarding the manner and method of delivery of the check. Ultimately, a Fulton Bank cashier's check was delivered to Plaintiff's counsel's office on May 20, 2014**.**  (N.T., 7/18/14, pp. 59-65.) Upon receipt of the cashier's check, Plaintiff's counsel retained possession of the first two checks, which resulted in correspondence from Defendant Simon's counsel requesting return of the first two checks. Ten to twelve days after receipt of the cashier's check, Plaintiff's counsel objected to the cashier's check on the basis that the original source of the funds was Royal Green Reading Corporation. *(Id.* at 68.) After the Plaintiff filed a motion for contempt, he returned the three checks to defense counsel. (*Id.* at 68, 76.)

---

Fulton Bank into its account from which it issues cashier's checks.

Although Plaintiff's counsel alluded to the possibility of personal injury actions, environmental claims and tax liabilities, defense counsel indicated that he was not aware of any actions against or liabilities of Royal Green Reading Corporation.  (*Id.* at 78-79.)  Defendant Simon's counsel testified that, without any contrary evidence presented by the Plaintiff, he is unaware of any claims that would adversely affect any transferee of value from Royal Green Reading Company, including the cashier's check in this case.  (*Id.* at 80.)

### III.  STANDARD OF REVIEW.

An agreement to settle a lawsuit, which is voluntarily entered, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing.  *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970)*; Ferranti International, PLC v. Jasin*, No. CIV.A. 98-CV-5412, 2000 WL 632994, at *6 (E.D. Pa. May 5, 2000)(noting Pennsylvania courts have held even oral settlement agreements enforceable without a written document).  Such a settlement is enforceable summarily, upon motion, by a district court in a case pending before it.  *Gross v. Penn Mutual Life Ins. Co.*, 396 F. Supp. 373, 374 (E.D. Pa. 1975).

It is well settled that "[a] district court has 'inherent authority to enforce agreements settling litigation before it.'" *McClure v. Township of Exeter*, Civ. A. No. 05-5846, 2006 WL 2794173, at *1 (E.D. Pa. Sept. 27, 2006)(quoting *New Castle County v. U.S. Fire Ins. Co.*, 728 F. Supp. 318, 319 (D. Del. 1989)).  "Provided that the evidence demonstrates that the parties reached an agreement, a district court can enforce the terms agreed upon by the parties."  Id. When the parties mutually assented to the terms and conditions of the settlement at the time they made the agreement, the evidence is sufficient to support the enforcement of a settlement agreement.  *Wyndmoor Learning Ctr. v. City of Wilmington*, No. CIV.A. 93-4217, 1996 WL

117471, at *6 (E.D. Pa. Mar. 12, 1996). "[A] settlement agreement is still binding even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." *Id.*

IV. **DISCUSSION**.

Tremendous historical disharmony and multiple familial conflicts exist between the parties. This tumultuous history led to the instant litigation, which was ultimately resolved by the parties through mediation with the aid of this Court. Past disputes are not in issue. The sole matters before the Court are whether the motion to enforce settlement should be granted and whether Defendant Simon violated the Court's Order of April 25, 2014. The Court's analysis turns on the settlement agreement reached in open court at the conclusion of the successful mediation on January 7, 2013. *See* Docket No. 36.

    A.    **Plaintiff's Motion to Enforce Settlement.**

Plaintiff moved to enforce settlement and for an award of costs and attorneys' fees incurred in drafting, filing and presenting the motion to enforce settlement. *See* Docket No. 39. Plaintiff moved to enforce the settlement reached on January 7, 2013 because:

> Despite Plaintiff's repeated demands, Jonathan Simon has failed to make any payment towards the amount due under the Settlement Agreement. Defendant Simon has failed to offer any satisfactory explanation as to the delay to Plaintiff, nor make any arrangements for payment. Defendant Simon has been less than fully responsive in the nearly six months since the effective date of the Settlement Agreement, January 7, 2013.

*Id.* at 2 (citations omitted). Defendant Simon responded that:

> Plaintiff attempts to pick and choose which obligations under the Settlement Agreement are immediately enforceable and which obligations she may ignore. Jonathan's obligation to provide a check in the amount of $215,000 to the Estate of Julius Simon (the "Estate") has not yet matured because Plaintiff has failed to

> complete her outstanding obligations, including but not limited to, obtaining a final valuation of the late Mr. & Mrs. Simon's Massachusetts condominium and providing Mr. Julius Simon's Rolex watch to Jonathan. Because Plaintiff has ignored her obligations under the Settlement Agreement, Jonathan's obligation to provide the check has not yet matured and Plaintiff's motion should be denied.
>
> Moreover, Plaintiff filed this motion while fully aware of her outstanding obligations. In defiance of the unambiguous terms of the Settlement Agreement and ignoring repeated inquiries from Jonathan's counsel, Plaintiff still filed this motion to enforce <u>only</u> Jonathan's obligations. As discussed herein, and as Plaintiff is aware, Jonathan will immediately tender the check to the Estate simultaneously with Plaintiff's completion of her obligations under the Settlement Agreement. Because Plaintiff filed this motion in bad faith, Jonathan is entitled the reasonable attorneys' fees and cost he incurred as result of Plaintiff's frivolous motion.
>
> . . . .
>
> Jonathan has not breached the settlement agreement because his obligations have not yet matured. Jonathan does not dispute that the Settlement Agreement is an enforceable contract. However, Jonathan's only obligation under the Settlement Agreement has not yet matured because Plaintiff's obligations remain outstanding. Conspicuously absent from Plaintiff's motion is any discussion concerning her obligations under the Settlement Agreement. There can be no question that Plaintiff must obtain the final valuation of the Massachusetts condominium and provide Jonathan with Mr. Simon's Rolex watch.

*See* Docket No. 42, pp. 1-2, 4 (citation omitted). As stated at pages two and three, *supra*, this Court held a telephonic settlement conference on March 25, 2014, with counsel for the Plaintiff and Defendant Simon, at which time the Court believed that all issues concerning settlement between the Plaintiff and Defendant Simon had been resolved. On April 14, 2014, in order to effectuate settlement, I entered an Order directing that the Plaintiff should disclose information to counsel for Defendant Simon with respect to litigation in Massachusetts state court and

> Upon compliance with the above enumerated directives, the remaining open items of performance under the settlement agreement, namely: the exchange of the Rolex watch which was the subject of the settlement; and the $215,000 check payable to Plaintiff, Stephanie J. Simon, shall be exchanged no later than Friday, April 25, 2014.

*See* Docket No. 66.  Again, the Court believed that all matters between the parties with regard to enforcement and implementation of the terms of settlement were resolved.

Because the parties do not dispute that they reached a settlement on January 7, 2013, and it is evident that the Plaintiff and Defendant Simon and the Court have endeavored to enforce the January 7, 2013 settlement, the motion to enforce will be denied as moot.

**B.     Plaintiff's Motion for Sanctions Against Defendant Simon.**

On January 7, 2012, the Court recited the terms of settlement.  Regarding payment, it was stated:

> Here's my understanding of the terms of settlement: that Jonathan Simon will pay to the estate -- actually, it's probably through the trust, but it's the estate of Julius M. Simon -- the sum of $215,000.

*See* Docket No. 36, p. 5.  There was no objection by counsel to the Court's statement that the $215,000 payment by Defendant Simon would be made to the Estate.  As result, it appears that the payee on the first check, the Estate, was correct.  The next question, therefore, is whether Defendant Simon satisfied his obligation under the terms of the settlement agreement by tendering to Plaintiff's counsel a check drawn on the account of Royal Green Reading Corporation, made payable to the Estate.  According to the uncontradicted testimony of Defendant Simon's counsel, Defendant Simon is the sole shareholder with complete control of the governance of Royal Green Reading Corporation.  Further, the Plaintiff presented no testimony or evidence supporting her counsel's contention that the act of issuing a check from the account of Royal Green Reading Corporation was an *ultra vires* act.  Although the Court finds valid Plaintiff's concerns whether this check was properly authorized, Plaintiff has introduced no evidence to support those concerns that a bankruptcy, actions by creditors asserting

a fraudulent conveyance charge, or any other events might place in jeopardy payment of the settlement funds. Plaintiff's counsel raised these concerns **after** the checks were tendered and delivered, and produced no evidence during or after the July 18, 2014 hearing to show that a due diligence effort was made by the Plaintiff in support of these concerns.[6] The Plaintiff simply raised theories about what could possibly occur. Since the Court concludes that the initial check tendered by Defendant Simon which was made payable to the Estate would have satisfied Defendant Simon's obligation under the terms of the January 7, 2012 settlement agreement, along with other performance which is not in dispute, no sanctions will be issued against Defendant Simon.

      **C.**     **Plaintiff's Claim for Interest.**

Next, the Court must address the issue of whether not the Plaintiff is entitled to interest on the settlement sum of $215,000. Plaintiff's counsel represented at the July 18, 2014 hearing that the Plaintiff sought sanctions only with regard to the Court's April 14, 2014 Order. As a result, the Court must determine whether interest is due and payable to the Plaintiff from the date that payment was due on April 25, 2014 until such time as the settlement check is accepted by the Plaintiff.

The question of whether a settlement occurred is governed by state law. *Tiernan v. DeVoe*, 923 F.2d 1024, 1032-33 (3d Cir. 1991). The motion to enforce settlement is in the nature of a contract action, and it is undisputed that Pennsylvania law applies to this dispute. *Bankers*

---

[6] Plaintiff's counsel's questioning of defense counsel alluded to possible lawsuits such as a personal injury action against one of the Royal Green entities. These questions, however, are not evidence and the Plaintiff produced nothing indicating that either Royal Green entity has issues regarding financial responsibility. (N.T., 7/18/14, pp. 19-20.)

*Trust Co. v. Bethlehem Steel Corp.*, 752 F.2d 874, 882 (3d Cir. 1984)(stating applicable law is law of jurisdiction with most interest in the dispute). "Prejudgment interest is compensation allowed by law or fixed by contract for the use or detention of a plaintiff's property by the defendant." *Dasher v Dasher*, 542 A.2d 164 (Pa. Super. 1988)(quoting *Verner v. Shaffer*, 500 A.2d 479, 481 (1985)). While prejudgment interest is awarded as a matter of right in a contract action, it is important to understand that this principle is based upon the fact that a breaching party has deprived the payee of using interest accrued on the money which was rightfully due. *See Portside Investors, L.P. v. Northern Ins. Co. of New York*, 41 A.3d 1, 14 (Pa. Super. 2011)(citing *Somerset Comm. Hospital v. Allan B. Mitchell & Assocs.*, 685 A.2d 141 (Pa. Super. 1996) (citation omitted); *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 469 (Pa. Super. 2003) and *Restatement (Second) of Contracts* § 354 (1979) (providing interest for breach of contract from time payment under contract is due less all deductions to which party in breach is entitled)).

The award of interest is not punitive, but is to compensate the payee for the loss of use of the money. *Atlin v. Security-Connecticut Life Ins. Co.*, 788 F.2d 139 (3d Cir. 1986)(noting "[t]he state courts have not imposed a prerequisite for bad faith or blame worthy conduct; rather, the triggering factor is the failure to pay the money when it is due."). The United States Court of Appeals for the Third Circuit has explained the considerations that should guide a district court in exercising its discretion to award prejudgment interest:

> As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due. Awarding prejudgment interest is intended to serve at least two purposes: to compensate prevailing parties

13

> for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit from the inherent delays of litigation. Thus prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable.

*Anthony v. Mazda Motor of Am.*, Civ. A. No. 1999-78, 2007 WL 5083335, *4 (Aug. 20, 2007)(quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 208 (3d Cir .2004) (citation and quotation omitted); see also Booker v. Taylor Milk Co., Inc., 64 F.3d 860, 869 (3d Cir.1995) ("To fulfill [its] make-whole purpose, prejudgment interest should be given in response to considerations of fairness and denied when its exaction would be inequitable." (internal citation and quotation omitted)); *Davis–Richards v. Gov't of the V.I.*, 33 V.I. 83, 89–90 (Terr.Ct.1996) (considering whether the equities favored awarding prejudgment interest under Section 951 before exercising the court's discretion to do so)).  It is appropriate for a court to refuse to grant pre-judgment interest where the actions of the payor did not result in wrongfully withholding money due under the settlement agreement.  *Ruddy v. Mt. Penn Borough Mun. Authority*, Nos. 1120 C.D. 2013 & 1200 C.D. 2013, 2014 WL 1852002, *5 (Pa. Commw. Ct. May 6, 2014)(non-precedential).

In this case, Defendant Simon tendered payment in a fashion that has already been determined by this Court as appropriate.  The Plaintiff chose not to negotiate the tendered checks and three times asked for a replacement check.  The replacement checks were tendered in this case to accommodate the Plaintiff's requests.  The failure to negotiate these checks and, therefore, realize the funds pursuant to the settlement agreement was due to a conscious decision by the Plaintiff.  This exceptional or unusual circumstance makes an award of interest to Plaintiff inequitable.  Thus, the Court will not award interest to Plaintiff on the settlement sum, but

instead, directs that the $215,000 Fulton Bank cashier's check previously tendered to Plaintiff should again be delivered to Plaintiff's counsel no later than Monday, September 29, 2014.[7] Delivery of the Fulton Bank cashier's check will satisfy Defendant Simon's obligation under the settlement agreement reached on January 7, 2013.

## V.     CONCLUSION.

For all of the reasons discussed above, the Plaintiff's motion to enforce settlement is denied as moot.  Plaintiff's motion for attorney fees and costs is denied.  Defendant Simon's motion for attorney fees and costs contained in his response to the motion to enforce settlement is denied.  Plaintiff's motion for sanctions and interest is denied.

An appropriate Order follows.

---

[7] The manner of delivery may be by mail, overnight delivery or personal delivery.